## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | Civil Action No. 06-1485 (NLH) |
| | : : | |
| v. | : : | **OPINION** |
| OAK LANE PRINTING | : : | |
| Defendant. | : : | |

**Appearances:**

JACQUELINE H. MCNAIR
MARISOL RAMOS
DAWN M. EDGE
TERRENCE R. COOK
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
PHILADELPHIA DISTRICT OFFICE
THE BOURSE BUILDING
21 SOUTH FIFTH STREET
SUITE 400
PHILADELPHIA, PA 19106
*Attorneys for Plaintiff Equal Employment Opportunity Commission*

THOMAS J. BRADLEY
MCBREEN & KOPKO
EIGHT PENN CENTER
SUITE 1400
1628 JOHN F. KENNEDY BOULEVARD
PHILADELPHIA, PA 19103
*Attorney for Defendant Oak Lane Printing*

### HILLMAN, District Judge

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a complaint alleging that defendant Oak Lane Printing ("Oak Lane") violated the Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b) ("ADEA") when it terminated the

employment of David Rice and Thomas Everly.  Oak Lane filed a
motion for summary judgment seeking dismissal of the EEOC's
complaint.  For the reasons expressed below, Oak Lane's motion is
denied.

## I.   JURISDICTION

As alleged violations of the ADEA implicate federal question
jurisdiction, this matter is properly before the Court pursuant
to 28 U.S.C. § 1331.

## II.   BACKGROUND

This case involves the termination of two employees, David
Rice and Thomas Everly, by their employer, Oak Lane Printing.
Plaintiff, the EEOC, filed a complaint on March 30, 2006 claiming
that Oak Lane violated the ADEA when it terminated Messrs. Rice
and Everly.

Oak Lane is primarily engaged in the business of printing
and has approximately 60 employees.  In July 2004, Oak Lane
acquired Chapel Hill Printing and moved its operations, with the
exception of the web press equipment and web operators, from
Pennsylvania to New Jersey.  Within months, this acquisition put
Oak Lane in financial difficulty.  Oak Lane maintains that it
needed to cut approximately $250,000 from its budget to remain
financially viable.  Oak Lane argues that its decision to cut
certain employees was based upon which employees made the highest
wages and was not made to terminate older employees in violation
of the AEDA.

### A.   David Rice

David Rice began his employment with Oak Lane in 1967 after completing high school and trade school courses in printing.  Mr. Rice worked for Oak Lane in 1967 for three months, left and returned to Oak Lane from 1969 to 1973, left and returned again in 1977.  Mr. Rice alleges that he left Oak Lane during these periods because the commute was too far, he wanted to change his work hours, and wanted increased salary.  When Mr. Rice returned to Oak Lane the first time in 1969 he primarily worked as a presser on the sheet-fed press.  When he returned to work in 1977, he worked as a feeder operator, and after approximately seven months, transferred to a pressman where he remained for approximately thirteen years.

In 1990, Mr. Rice injured his back while on the job and was out of work for approximately 26 months on workers' compensation.  Mr. Rice was cleared by defendant's workers' compensation physician to return to work in 1992.  Mr. Rice admitted that Oak Lane could not hold his job as pressman open for two years while he was out due to his back injury, but stated that if one were available he would have pursued that position.

Mr. Rice was hired instead as a truck driver for Oak Lane and worked in that position for approximately two years.  Mr. Rice requested to be transferred to a position inside the printing plant and was transferred to the bindery department

3

where he worked as a helper assisting the folders on the folding machines.[1]  Thereafter, Mr. Rice moved to the shipping department for an increase in salary and worked there for approximately two years.  In or about 2001, Oak Lane transferred Mr. Rice into the plate-making department where he worked for approximately one year.  Mr. Rice states that Oak Lane moved him to this department because he had experience in plate making from his work as a pressman.  When plate-making became more technologically advanced, the position of plate-maker became obsolete and Oak Lane offered Mr. Rice a position in its front office.  Mr. Rice remained doing office work for about eight months until the fall of 2003 when he was transferred back to the bindery department where he remained until he was terminated in October 2004.

The parties disagree over the title of Mr. Rice's position in the bindery department at the time of his termination.  The EEOC asserts that Mr. Rice's position was folder operator, while Oak Lane maintains that he was a bindery helper.  The EEOC argues that the fact that Mr. Rice reported to the bindery supervisor, Harry Thron, confirms that Mr. Rice was a folder operator since Mr. Thron only dealt with folder operators and did not interact with bindery helpers.  Oak Lane argues that Mr. Rice was a bindery helper and his position was assumed by the remaining

---

[1]  A folding machine is a machine that cuts paper and folds it to the desired size after the paper comes off the printer.

4

bindery helpers ages 55, 42 and 30.

Both parties agree that Mr. Rice worked on the folding machine and was trained by folder operator, Maureen Connelly. Ms. Connelly testified at her deposition that Mr. Thron instructed her to train Mr. Rice on the folder machine. She also stated that at times, she and Mr. Rice would work on a folder and would have a bindery helper assist them. Ms. Connelly described Mr. Rice as an "operator-in-training" which included the duties of a folder operator. In July 2004, Ms. Connelly resigned, and Mr. Rice worked on the folder machine until his lay-off in October 2004.

Shortly before Ms. Connelly resigned, in July 2004 Oak Lane purchased Chapel Printing located in New Jersey. As a result of this acquisition, Oak Lane moved its bindery department from Pennsylvania to New Jersey and Mr. Rice was transferred to the New Jersey facility. Also at this time, Oak Lane hired Shawn McLernon, 35 years old, as a web press helper.

Mr. Rice maintains that each time he was transferred to a new department Oak Lane knew that he had a desire to return to his original position as a pressman. Mr. Rice testified in deposition that he asked several managers at Oak Lane, including Oak Lane's former pressroom supervisor, Charles Kneale, if he could return to the presses, all of whom stated that it would be no problem for him return to the presses. Mr. Kneale testified

that he recalled that Mr. Rice reminded him about his interest in any pressroom openings approximately six times in over three years.

Despite his entreaties, Mr. Rice never returned to working as a pressman.  Several reasons are offered by the parties as to why.  Mr. Rice stated that George Dusak, Oak Lane's chief operating officer, told the pressroom supervisor, Charles Kneale, and lead pressman, Thomas Everly, that he (Mr. Dusak) would not let Mr. Rice return to work on the presses.  Mr. Dusak testified in deposition that Mr. Rice was not selected as a web press helper or pressman because Charles Kneale and Thomas Everly did not want him working in the pressroom.  However, Mr. Kneale testified in deposition that he approached Mr. Dusak and Mr. Maurizzio about Mr. Rice's requests, and they told him "absolutely no."  Mr. Kneale also testified Lisa Palmer, Oak Lane's Chief Financial Officer, stated that Mr. Rice was "a comp case waiting to happen."  In addition, Mr. Kneale testified that Mr. Maurizzio had a vendetta against Mr. Rice.  Oak Lane denies this characterization and maintains that Mr. Kneale and Mr. Everly told Mr. Maurizzio that they did not want Mr. Rice to work in the pressroom because they thought the job was too physically demanding for Mr. Rice.

In October 2004, Mr. Rice was told that he was being laid-off by bindery supervisor, Harry Thron.  At that time, there were

five employees retained in the bindery department.  Of the bindery helpers, Lye-Sim Chan was 55 years old and making $12/hour, Gary Barton was 42 years old and making $12/hour, and Amy Thompson was 30 years old and making $12.50/hour.  The other two employees were folder operators Joseph Snuffin who was 41 years old and Paul DeMille who was 40 years old.[2]  Oak Lane asserts that the decision to lay-off Mr. Rice was made by Mr. Dusak.  Oak Lane maintains that the reason for Mr. Rice's termination was that the acquisition of Chapel Printing left them financially strapped and they had to lay-off employees in order to remain financially viable.  At the time of his lay-off, Mr. Rice was 55 years old and making $12/hour.

Approximately two days following his lay-off, Mr. Rice returned to defendant's facility to discuss his lay-off with the owner Michael Dubowitch.[3]  Mr. Dubowitch told Mr. Rice that the decision to lay him off was "purely economics."  Despite defendant's alleged reasons, Mr. Rice believes that he was laid off because he was an older employee while retaining the younger former Chapel Printing employees.

---

[2]  The parties have not presented in their briefs facts concerning the salary or wages of Messurs. Snuffin and DeMille.

[3]  Oak Lane also refers to Michael Dubowitch as the owner's son.  The parties have not cleared up in their briefs whether there are two Michael Dubowitches or if the one is the owner or the owner's son.  In this Opinion, we adopt the non-moving party's description of Mr. Dubowitch as the owner.

7

**B.    Thomas Everly**

Mr. Everly began his employment with Oak Lane in 2002 as a pressman and had approximately thirty-four years of printing and press experience when he started.  Charles Kneale was Mr. Everly's supervisor until Mr. Kneale was terminated in July 2004.[4]  Mr. Everly maintains that his extensive background with printing presses, including the web press and sheet-fed press, put him in regular contact with the owner of Oak Lane, Michael Dubowitch, and COO George Dusak.  Specifically, Mr. Everly states that he would provide Oak Lane with assistance in technical, scheduling and maintenance matters, which were not part of his job description, and was considered the "go-to guy," especially since Oak Lane did not have an outside maintenance company to repair its presses.

The EEOC maintains that Mr. Everly's work history reflects that he was considered a good employee and was recognized as "one of Oak Lane's best employees."  When Mr. Everly began his employment with Oak Lane his salary was $24/hour and within a year his benefits were increased with a full medical package and an additional week of vacation.  In or about the end of 2003, Mr. Everly was promoted to lead pressman which included a $3.00/hour pay increase.

_____

[4]  Mr. Kneale also pursued ADEA claims against Oak Lane but the EEOC found "no probable cause."

8

In or about February 2004, Wayne Maurizzio was hired as Oak Lane's new General Manager.  After Charles Kneale was terminated, Mr. Everly reported directly to Mr. Maurizzio.  Testimony from Mr. Everly and Mr. Maurizzio reflect that the two were not fond of each other.  Mr. Everly maintains that despite ill-feelings, he always complied with Mr. Maurizzio's directives even when he felt that Mr. Maurizzio's instructions may have produced the wrong outcome.  On one occasion, both men got into an exchange where they used raised voices.  Mr. Everly maintains that he was never disrespectful or insubordinate to Mr. Maurizzio, and was never reprimanded for insubordination.  Mr. Everly also points to the testimony of COO, George Dusak, who described Mr. Everly as a "team player" who always tried to save the company money.

After the acquisition of Chapel Hill when most of the departments were transferred to the New Jersey facility, Mr. Everly remained at the Pennsylvania location because the web presses remained at that location.  During that time, Oak Lane hired Sean McLernon, age 35, as a web press helper to assist Mr. Everly on the web press.

In October 2004, Mr. Everly was laid off.  Mr. Everly testified that he was informed of the lay off by Mr. Maurizzio while Mr. Maurizzio was smoking a cigarette in the main entrance of defendant's Pennsylvania facility.  Mr. Maurizzio informed Mr. Everly that he was being laid off for financial reasons.  Mr.

9

Everly, however, feels that it was not his salary, but Oak Lane's desire to terminate the older employees since in addition to him, Charles Kneale, David Rice and Tom O'Connell, all of whom were fifty years old or older, were also let go.  The EEOC also points to the deposition testimony of Mr. Everly's former supervisor, Charles Kneale, who stated that Oak Lane had an agenda to get rid of the older workers.

Mr. Everly asserts that he was replaced by Mr. McLernon, who was 35 years old at the time of Mr. Everly's termination.  In addition to being much younger that Mr. Everly, the EEOC states that Mr. McLernon was less experienced and had documented performance issues in his personnel file.

The EEOC also argues that Mr. Dusak and Mr. Maurizzio, both of whom played a role in the decision to terminate Mr. Everly, made facially discriminatory remarks concerning Mr. Everly's age. Mr. Maurizzio testified that he would "get a name or two in [his] head," and then meet and decide with Mr. Dusak which employees to lay-off.  The EEOC also refers to Mr. Maurizzio's statement that "certain people at age 55 cannot do certain jobs."  In addition, the EEOC points to Mr. Dusak's testimony in which he referred to Mr. Everly as an "old dog" and "old school kind of guy."  Oak Lane denies that either man, or anyone else at Oak Lane, made any discriminatory remarks concerning Mr. Everly's age.  Oak Lane also maintains that only Mr. Dusak, who also hired Mr. Everly and

who is roughly the same age as Mr. Everly, solely made the decision to terminate his employment.

## III.   DISCUSSION

### A.   Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

11

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.    Standard for AEDA Claim**

In Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231, 234-35 (3d Cir. 1999), the Third Circuit outlined how to properly apply the burden-shifting standard in AEDA claims. "First, the plaintiff must produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a *prima facie* case.... When the plaintiff alleges unlawful discharge based on age, the *prima facie* case requires proof that (i) the plaintiff was a member of the protected class, i.e., was 40 years of age or older (see 29 U.S.C. § 631(a)), (ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and (iv) that the plaintiff was replaced by a

12

sufficiently younger person to create an inference of age discrimination." Id. (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)).  In reduction-in-force ("RIF") cases, a plaintiff must show that the employer retained a sufficiently younger similarly situated employee. See Monaco v. American General Assur. Co., 359 F.3d 296, 301 (3d Cir. 2004) (citing Anderson v. Consol. Rail Corp., 297 F.3d 242, 249-50 (3d Cir. 2002)).

"If the plaintiff establishes a *prima facie* case, then '[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge.'" Id. (quoting Keller, 130 F.3d at 1108 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)).  "... [I]f the defendant satisfies this burden, then the burden of production shifts back to the plaintiff to proffer evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

13

### 1.   **David Rice**

It appears that the EEOC is bringing two age discrimination claims against Oak Lane with regard to Mr. Rice on the grounds that: (1) Oak Lane wrongfully terminated Mr. Rice from his position in the bindery department while retaining a sufficiently younger employee; and (2) Oak Lane discriminated against Mr. Rice by hiring Sean McLernon, age 35, as a web press helper in the department where Mr. Rice previously worked instead of Mr. Rice. We address each claim in turn.

### (a) Termination from Employment

Mr. Rice was 55 years old at the time he was laid off establishing the first and second element of his *prima facie* case - that he was a member of the protected class and that he was discharged.  There is disagreement between the parties over the third element – whether he was qualified for the job.  The EEOC asserts that Mr. Rice was a folder operator while Oak Lane argues that Mr. Rice was a bindery helper.

Ms. Connelly, a former folder operator at Oak Lane, testified in deposition that she was instructed by the supervisor for the bindery department in early to mid 2004 to train Mr. Rice in "learning the folder."  She testified that she trained Mr. Rice and they would assist each other on the machines.  When asked about Mr. Rice's duties, particularly whether he was a folder operator or bindery helper, Ms. Connelly stated that Mr.

14

Rice was  an "operator-in-training."  She also testified that at
times she and Mr. Rice would be assisted by a bindery helper.
Ms. Connelly was unaware of Mr. Rice's duties after she left in
July 2004.

     The parties provide different interpretations of the
conclusion to be drawn from Ms. Connelly's testimony.  The EEOC
asserts that Ms. Connelly confirms Mr. Rice's testimony that he
was a folder operator at the time he was laid off, while Oak Lane
argues that Ms. Connelly supports Mr. Maurizzio's testimony that
Mr. Rice was a bindery helper when he was laid off.

     In order to decide whether Mr. Rice has met the elements of
his *prima facie* claim, it must be determined whether he has
proffered sufficient evidence for a reasonable fact finder to
conclude that he was qualified for "the job."  Although there is
no agreement as to what "job" Mr. Rice had, we find that Mr. Rice
has presented enough evidence that reasonable jurors could
conclude based on the testimony of Mr. Rice and Ms. Connelly that
he worked as a folder operator at the time of his termination.
Ms. Connelly testified that Mr. Rice was an operator-in-training
and that he would be assisted by bindery helpers.  When she left
Oak Lane, Mr. Rice testified that he continued in that job.
Reasonable jurors could conclude that Mr. Rice continued as a
folder operator and was not demoted to a bindery helper at the
time of his termination.  Therefore, a genuine issue of material

fact exists as to the job that Mr. Rice held and defendant has not proven as a matter of law that it is entitled to summary judgment. Thus, assuming for purposes of this motion only that Mr. Rice was a folder operator, plaintiff has presented sufficient facts to go to a jury that he was qualified for that job given that Oak Lane began training Mr. Rice to be a folder operator. Thus, Mr. Rice meets the third element of his *prima facie* case. Mr. Rice also meets the last element of his *prima facie* case since he was replaced by sufficiently younger folder operators Joseph Snuffin who was 41 years old and Paul DeMille who was 40 years old.

Oak Lane argues that Mr. Rice was laid-off because the company faced severe financial difficulty and needed to lay-off workers immediately. Mr. Rice was paid $17.00 per hour, while the remaining bindery helpers were making only $12.00 to $12.50 an hour. Although Oak Lane only offers the per hour rate of the bindery helpers and not of the remaining two folder operators, Oak Lane has alleged that it faced a $250,000 shortfall and needed to cut employees in order to remain viable. Since the burden of persuasion still rests with the plaintiff, even though the burden of production shifted at this stage to the defendant, Oak Lane's evidence of severe financial hardship offers a legitimate, non-discriminatory reason for Mr. Rice's termination.

The burden now shifts back to plaintiff to proffer evidence

16

that would cause a fact finder to disbelieve Oak Lane's reason, or to believe that a discriminatory reason was more likely than not the motivating cause of his termination.  The EEOC alleges that in 2004, defendant terminated Mr. Rice while retaining sufficiently younger employees.  They point to Mr. Kneale's deposition testimony in which he stated that Mr. Maurizzio had a vendetta against Mr. Rice.  They also point to testimony of Lisa Palmer who described Mr. Rice as "a comp case waiting to happen" as evidence that reasons other than economics motivated Oak Lane's decision.  Finally, the EEOC cites to Mr. Maurizzio's deposition testimony that "certain people at age 55 can not do certain jobs."  The EEOC argues that this evidence shows that defendant harbored an age bias against Mr. Rice and that its proffered reason for his termination is pretext.

We find that the above proofs provide sufficient facts for a reasonable jury to disbelieve Oak Lane's proffered reason for Mr. Rice's termination, or that it was more likely than not that age discrimination was the motivating cause of his termination.

### (b) Refusal to Hire

The EEOC also alleges that Oak Lane discriminated against Mr. Rice by hiring Sean McLernon, age 35, as a web press helper instead of Mr. Rice.  In a refusal to hire case, the burden-shifting test applies, but plaintiff proves his *prima facie* case by showing: "1) that he belongs to the protected class, 2) that

17

he applied for and was qualified for the job, 3) that despite his qualifications he was rejected, and 4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications." Barber v. CSX Distribution Services, 68 F.3d 694, 698 (3d Cir. 1995) (quoting Fowle v. C & C Cola, 868 F.2d 59, 61 (3d Cir. 1989)(other citations omitted)).  We find that Mr. Rice has met the first and fourth elements: Mr. Rice is 55 and a member of the protected class, and Mr. McLernon was sufficiently younger than Mr. Rice.  The parties dispute the second and third elements.

With regard to the second element, whether Mr. Rice applied for and was qualified for the job, the EEOC maintains that Mr. Rice made it known that since his return to Oak Lane after his injury he had desired to become a pressman again.  Mr. Kneane testified that Mr. Rice had told him at least six times in a three year period that he was interested in being a pressman, but that Mr. Dusak and Mr. Maurizzio did not want Mr. Rice working as a pressman.  Mr. Dusak testified that if there was an opening he would have supported Mr. Rice's transfer but that neither Mr. Kneane nor Mr. Everly wanted Mr. Rice to work in that department because, in their opinion, Mr. Rice was not physically able to do the work.

Although the parties finger-point at each other as to who

18

did or did not want Mr. Rice working as a pressman, there is
sufficient evidence for a reasonable fact finder to conclude that
Mr. Rice applied for the job as a pressman or a web press helper
and was denied.  Mr. Rice has provided evidence that anyone who
had authority to approve his transfer knew about his interest and
that he repeatedly requested such a transfer.  Oak Lane has not
proffered any evidence that the application process required
more.

     We also find that plaintiff has proffered sufficient facts
to go to a jury on the issue of whether Mr. Rice was qualified as
a web press helper.  Mr. Dusak testified in deposition that he
would have supported Mr. Rice's candidacy, an implicit
endorsement of his ability to meet all the requirements of the
job.  While Oak Lane has proffered some evidence that Mr. Rice
suffered physical problems there is also deposition testimony by
Ms. Connelly that he was physically able to work on the folding
machine.  This factual dispute precludes us from concluding as a
matter of law that defendant's decision not to transfer Mr. Rice
was due to a pure physical limitation.

     Therefore, Mr. Rice has presented a *prima facie* case for age
discrimination regarding his termination from employment as well
as his claim for failure to hire.  The burden now shifts to
defendant to offer a legitimate, non-discriminatory reason for
the refusal to hire Mr. Rice.  See Barber, 68 F.3d at 698.

19

Oak Lane alleges that Mr. Rice was not hired because Mr. Everly, the lead pressman, and Mr. Keane, the press supervisor, thought that Mr. Rice could not meet the physical demands for the position.  Oak Lane relies on the deposition testimony of Mr. Everly who stated that the job required the individual to have dexterity with his hands; ability to walk up steps and squat; and ability to lift up to 50 pounds 10-20 times per hour.  Mr. Everly also testified that Mr. Rice had no knowledge of "webs."[5]  Oak Lane also relies on the testimony of Lisa Palmer who worked with Mr. Rice in the office who observed that Mr. Rice "couldn't climb the steps that easily."  Also, Oak Lane states that Mr. Rice was six feet tall and weighed 270 to 275 pounds.  In addition to his back injury in early 1990, Mr. Rice had knee surgery in 2003. Oak Lane also refers to medical records of Mr. Rice's physician that indicate Mr. Rice had shoulder pain (rotator cuff tear), difficulty ambulating and carpal tunnel syndrome.  Oak Lane maintains that the facts show that Mr. Rice was not transferred to the web press because of his physical limitations only.  As such, Oak Lane has proffered a legitimate, non-discriminatory reason for refusing to hire Mr. Rice due to his alleged physical limitations.

The EEOC responds that Oak Lane's reason is pretext.  The EEOC points to Mr. Keane's deposition testimony in which he

---

[5]   It appears that Mr. Everly is referring to the web press.

20

stated that when he approached Mr. Dusak and Mr. Maurizzio about Mr. Rice's interest in the position and they said "absolutely not" but did not state that the reason for the denial was due to Mr. Rice's physical limitations.  Coupled with Mr. Maurizzio's deposition testimony that "certain people at age 55 can not do certain jobs," the EEOC argues that this suggests the reason why Mr. Rice was not allowed to transfer was due to age discrimination.  In addition, the EEOC states that defendant's workers' compensation physician cleared Mr. Rice for work after his back injury in 1992 and Mr. Rice's deposition testimony that his knee was fine and had no residual problems.

Although Oak Lane has presented evidence that Mr. Rice had physical limitations that could have impaired his ability to be a web helper, it relies in part on a twelve year old back injury with no evidence that the injury currently impaired his abilities.  We find that the EEOC alleged sufficient facts for a jury to either disbelieve Oak Lane's proffered reason for its refusal to hire Mr. Rice as a web helper, or that age discrimination was more likely than not the motivating cause of its refusal.

## 2.  Thomas Everly

The parties agree that Mr. Everly was 60 years old at the time he was laid off; that Mr. Everly was qualified for the job

of lead pressman; and that his replacement, Shawn McLernon, was 35 years old making him sufficiently younger than Mr. Everly. Pleaded as such, Mr. Everly has sufficiently presented a *prima facie* case of age discrimination in a RIF case.

Oak Lane's proffered reason for Mr. Everly's termination was that the company was experiencing financial difficulty and needed to cut approximately $250,000 from its budget to remain financially viable.  Mr. Everly was chosen because he made $28 per hour whereas Mr. McLernon made $12 per hour.[6]

The EEOC counters that Oak Lane's stated reason is pretextual.  The EEOC argues that Mr. Dusak and Mr. Maurizzio were responsible for deciding that Mr. Everly should be terminated.  Both men, they argue, made facially discriminatory remarks concerning Mr. Everly's age.  The EEOC points to Mr. Dusak's testimony in which he referred to Mr. Everly as an "old dog" and "old school kind of guy."[7]  The EEOC also refers to Mr.

_____

[6]  There is also evidence concerning animosity between Mr. Everly and Mr. Maurizzio.  The EEOC argues that there is no evidence suggesting that Mr. Everly was terminated for insubordination.  Oak Lane also takes the position that even if the relationship between Mr. Everly and Mr. Maurizzio was contentious, it was the financial concerns that precipitated Mr. Everly's termination.  Therefore, since neither party relies on insubordination as the reason for the termination, this Opinion does not address it.

[7]  Defendants argue that Mr. Dusak's statements were not discriminatory remarks but were made to explain a "kinship" between Mr. Dusak (who describes himself as a "old dog") and Mr. Everly.  How such statements are to be interpreted are the province of the jury and not decided as a matter of law.

22

Maurizzio's statement that "certain people at age 55 cannot do certain jobs."  Such statements, argues the EEOC, suggest that a discriminatory animus was a motivating factor in terminating Mr. Everly's employment.

Oak Lane denies that Mr. Maurizzio had any involvement in the decision to lay-off Mr. Everly.  Oak Lane maintains that Mr. Dusak solely made the decision, and that Mr. Dusak was the same age as Mr. Everly at the time of termination which creates an inference that discrimination was not a motivating factor in his termination.

Whether Mr. Maurizzio played a part in the decision to terminate Mr. Everly is a dispute of material fact.  Mr. Maurizzio was the general manager of Oak Lane and had direct supervision over Mr. Everly.  Mr. Maurizzio personally told Everly that he was terminated.  Finally, Mr. Maurizzio testified that he would "get a name or two in [his] head," and then meet and decide with Mr. Dusak which employees to lay-off.  These facts suggest that Mr. Maurizzio had an active role in the decision to terminate Mr. Everly.

Even if Mr. Dusak acted in concert with Mr. Maurizzio, Oak Lane asserts that an inference of age discrimination should not be drawn because Mr. Everly was over 40 years old when he was hired which counters an inference of discrimination.

According to the record, Mr. Everly was approximately 58

years old when he was hired in 2002, which places him in the
protected class at the time of hire.  Employers who knowingly
hire someone over 40 "... seldom will be credible targets for
charges of pretextual firing." Maidenbaum v. Bally's Park Place,
Inc., 870 F. Supp. 1254, 1267 n. 24 (D.N.J. 1994) (quoting Proud
v. Stone, 945 F.2d 796, 798 (4th Cir. 1991); see also E.E.O.C. v.
MCI Intern., Inc. 829 F.Supp. 1438, 1461 (D.N.J. 1993) (finding
"incredible" that same company who recently hired employee at 49
years of age would less than three years later suddenly develop
an aversion to older people, relying on Lowe v. J.B. Hunt
Transport, Inc., 963 F.2d 173, 174-75 (8th Cir. 1992)).
The fact that Mr. Everly was hired at age 58 by Mr. Dusak and
laid-off approximately two to three years later suggests that age
was not a motivating factor in the decision.  Mr. Dusak testified
that he ultimately made the decision to terminate Mr. Everly.
However, Mr. Maurizzio's testimony suggests that he may have
played an influencing role in that decision and plaintiff alleges
that Mr. Maurizzio was motivated by a discriminatory animus
towards Mr. Everly based upon his age.

At the summary judgment stage, we must take all inferences
in the light most favorable to the non-moving party.  It cannot
be said as a matter of law that no jury could find that Mr.
Maurizzio did not play a part in the decision to lay-off Mr.
Everly and that Mr. Maurizzio, who did not hire Mr. Everly and

24

who is significantly younger than Mr. Everly, did not

discriminate against Mr. Everly on the basis of his age.


### III.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary

judgment is denied.  An Order consistent with this Opinion will

be entered.[8]

  s/Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: December 20, 2007

---

[8]   The EEOC also filed a motion to strike Oak Lane's reply
in support of its motion for summary judgment as untimely.  It is
within this Court's discretion to dismiss any brief that has not
been timely filed. L.Civ.R. 7.1(d)(7); see U.S. v. Eleven
Vehicles, Their Equipment and Accessories, 200 F.3d 203, 214 (3d
Cir. 2000)(concluding that local court rules play a significant
role in the district courts' efforts to manage themselves and
their dockets).  Since the reply is in support of a motion for
summary judgment, and since we find no prejudice to the plaintiff
upon the filing of the reply two days late, we decline to
exercise our discretion in striking defendant's reply.  See
Player v. Motiva Enterprises, No. 02-3216, 2006 WL 166452, at *3
(D.N.J. Jan. 20, 2006) (considering untimely filing because court
should not grant a motion for summary judgment without examining
the merits).  The EEOC's motion to strike Oak Lane's reply is
denied.